We will call on this case please. 313-0990, People of the State of Illinois, Affiliate by Robert Hanson v. Chrissy Rivera, Appellant by Thomas Corrales. Mr. Corrales, good morning. Good morning. It please the court and counsel, I'm Tom Corrales. I'm representing Chrissy Rivera in this case. This is a direct appeal following a jury trial in which Chrissy was convicted of assisting a peace officer. The issue on appeal is whether the court below erred in denying the defendant's tendered instruction on self-defense. There were two versions of what happened during the course of the traffic stop in this case. The state presented testimony from the Bolingbroke officer who conducted the stop for an equipment violation, which was Chrissy not having a light above the license plate on her older model Honda. And what transpired at the scene of that traffic stop from the point at which Officer Fisek came back to the court to hand a citation to my client was disputed by the testimony of the officer and the testimony of my client. Officer Fisek depicted an encounter in which he tried to explain to Chrissy why she needed to sign the citation and it is that testimony of the officer that prompts the state in the appeal here to proclaim that my client was uncooperative from this point of the stop forward. One thing I would like the court to note and take into account in this appeal is that there was no video in this stop. There was no onboard dash camera in Officer Fisek's squad car. So the dispute between the testimony gave the jury a significant role to play in assessing whether the officer was being truthful in how he described his encounter with Chrissy or to whether to believe Chrissy. And my client, of course, did not confirm any of the testimony of Officer Fisek. In fact, her account of what happened during the stop could lead a person faced with deciding who was in the wrong or more in the wrong to conclude that it was the officer who was becoming difficult during the stop. And in my brief I lay out in detail the testimony of Chrissy. Would you agree that if we just look at the officer's testimony, it would ignore her testimony? In what issue? It's not a reasonable doubt. Yes, if it was a reasonable doubt. I mean, as far as what the issue is. Well, we're here on a jury instruction, right? Well, you cannot play that role. I didn't suggest we could. It's the jury. If we ignore your client's testimony. But so now what we've got to do is decide is there evidence that would support the defense instruction for self-defense, right? Is there slight evidence that would support the giving of the instruction if it could be believed? So the who believes is really the center of this argument. So what's the evidence that supports the self-defense instruction? Chrissy's testimony, first of all, it takes issue with the officer's description of what happened when, again, the point at which the testimonies diverge. When the ticket is handed to her and FISAC says you have to sign it. She testifies, I'm not comfortable signing something that I don't know is accurate. Can I get out and look? The officer refused, according to Chrissy. She testifies that they went back and forth over whether or not she could get out and take a look before she signed. So under that scenario, my client's behavior could be described as only conditionally refusing, not obstructing. That's first. Second, the officer became angry and agitated and cursed when he asked her or demanded that she just give me the ticket back. So according to my client, you've got an angry officer who's causing her, by her own testimony, to start becoming fearful. And as the officer stood next to his car, without making any other requests after snatching the ticket away from her, she did admit that she dialed up her mom on the cell phone. This is different than just ignoring the officer. She testifies he's not doing anything. And the last distinction, Chrissy's testimony differs from Officer Fisac, is she testifies that he opens the door at the same time, demands that she gets out of the car, and gives her no time to comply. So there's a distinct difference in whether or not the officer was to be believed about a defiant motorist who just sits there and ignores him, or the defendant. Well, I guess where I'm going is those are all jury arguments. And my question is this, because, you know, if, for example, refusing to sign, I don't think that's resisting arrest. That might be obstructing, but I'm not signing that. It's probably not resisting arrest. Would that be at the best, if anything, it would be obstructing. I mean, obstructing involves impeding or hindering or delaying even, but arguing about the validity of a ticket is not obstructing. You can try to convince the officer that he's not doing the right thing. She was convicted of resisting, not obstructing, right? Actually, the charge is resisting an arrest. So, at the time of the arrest, what's the evidence that would say she resisted the arrest? Because I'm not sure, from a legal standpoint, this business about who got along with who at the beginning has anything to do with who was the troublemaker at the outset. As far as at the time the arrest is made, whether she resisted or not, or whether she was justified in resisting. Well, I would just say, you know, there's a part of the state's brief that kind of makes a doomsday scenario that, you know, if you just have to testify that you're afraid, you know, everybody could just, you know, disagree with the officer. I think the preliminary encounter gives factual support to the statement, I was afraid. She became fearful by the agitation shown by the officer. And her fear, you know, whether she legitimately thinks she's going to be harmed when she testified, is a distinction in a lot of these cases. I mean, there are cases that talk about, well, the defendant just seemed to be a hothead and didn't seem like he was afraid. He was wanting to duke it out with the officer. This is not Chrissy, 21-year-old female Rivera. This is a fearful person who doesn't think the officer is acting properly toward her. And then when he opens the door and says, get out of the car, she testifies she didn't say you're under arrest at that time. She testifies she didn't remember. And so there's a factual dispute as to whether or not, and how long do you have to comply? And is a big part of the divergence in the testimony. So pulling away, you know, is it justified or not, is the heart of this. And the jury was not even given the added element of the issues instruction that the state showed that she wasn't justified. Nor was the jury given the standard instruction on what self-defense of the person is. In effect, what the judge did in weighing the evidence is deny the defendant her demand for a jury trial. At least with respect to the affirmative defense issue. And that's, you know, something that has to be reserved to the jury. If there's slight evidence which it believed would support the affirmative defense, the judge doesn't get to decide I don't think it's there. I've heard it, but I don't agree with it. That just takes away the jury's function and usurps the role of deciding is this affirmative defense. For self-defense, there's got to be evidence of excessive force by the police, right? That's correct, in this instance. I guess that's my question, exactly what evidence, what exactly is the evidence of excessive force by the police? Well, grabbing her wrist and then her ponytail, and then the other officer opening the opposite door of her car and grabbing ahold of her was what caused her to take the steps that she did. And if it's resisting arrest, it has to be a physical act. Well, her physical act... By the time the other officer comes around on the other side, I mean, she's already pulled away, right? She's already on the other side of the car. So I said it seemed like resisting, if there was any resisting had already occurred by the time the other officer comes around on the other side of the car. But we're talking about an affirmative defense. That seems to go into a reasonable doubt analysis. Is there resisting here? I don't have a reasonable doubt argument in my brief. The question is, yes, if she was deemed to have resisted the officer's pulling of her, which he's entitled to use the force necessary, was it justified? Was it a justified pulling back? And the question then becomes, under Sims and other cases by this court, was the officer excessively forceful? So did the jury get to decide whether the officer was excessively forceful? No. It heard her testimony that he was over-the-top aggressive, but they didn't have an instruction. So what was the point of the testimony? The judge took the relevance of the testimony away in denying the self-defense instruction. And that's the heart of this is, you know, is the judge entitled to put the testimony on the scales? There has to be no testimony that would support the giving of the instruction. What time was the traffic stopped? 9.30 at night. Dark out? Yes. And the state, in its brief, it really is only addressing the question of whether the defendant should have been convicted, in spite of her assertion that she was defending herself. Again, that is not the argument I make. This is not a reasonable doubt argument. The standard for whether a jury instruction must be given doesn't look at the evidence in the light most favorable to the state. The standard jury instruction here is designed to make sure the jury gets to decide the disputed factual issues in the case. The jury did not get to decide the justification issue in this case. The denial of the instruction that the defense asked for just gave the jury little choice in choosing whether to believe the officer's account or Chrissy's account, because it would seem that Chrissy's account didn't matter from the instructions that it had. And so in taking away the jury's ability to do anything with the account that they heard from my client, the judge in this case denied Chrissy her right to present a valid defense to the charge. ...of excessive force by the police that would justify resisting if the jury found what she said was true and they believed it. Right. And so I'm just trying to get my mind clarified exactly what evidence specifically could we point at that says that the officers used excessive force if believing what the police said that would give rise to the type of excessive force that would justify self-defense on the part of a defendant. Well, since your premise there is taking the account of the defendant who testified, I would put myself in the position of that person. You are stopped supposedly for not having a working light. Most of us don't check at night every time we get behind the wheel, start the car up, go back, see is my light working. So you don't know if he's telling the truth. You might think he's rousting you, 21-year-old female. I want to look. And you go into a little debate with the officer about whether you can go out and verify that the stop is justified. And he snatches the ticket and curses at you and says, get out of the car then. That's excessive. That's not the way a police officer should be acting. It's basically taking offense at being questioned. And we know that even obstructing, let alone resisting, does not entail questioning the officer. Well, I'm sure most police officers don't like to have their authority questioned. But what if the light was working on that license plate? Well, under the law, and the scenario you just described, I would agree, is hardly proper behavior by police officers. But under the law, one's not entitled to resist even an unlawful arrest. No. And you can only resist an arrest where there's excessive, where the police are using excessive force. And rude language is hardly excessive force that would allow you to resist, right? Correct. I think the force begins when the door is opened in the act of grabbing the wrist of the defendant who testified and she wasn't given enough chance to comply. That's force. And the ponytail was grabbed. That's force. And you have to sort out, well, was it because he waited long enough patiently? It would have been really nice to have a video of this case. We probably wouldn't have an appeal if the officer was being truthful. It was an eyewitness that didn't testify. The ride-along officer did not testify. So we have to sort through whose testimony was accurate here. I think there's slight evidence. The standard is there's slight evidence if the jury believes it. And, you know, grabbing of her wrist is excessive if it's done immediately and in an intense anger response, which the defendant felt like she was going to be hurt. Is a test for excessive force subjective or objective? It has to be objective, I think. But there was a subjective element of the cases all talking about whether the defendant testified he was in fear. Now, I don't know where that comes into play, but I would say that there's a component of the state of mind of the defendant that if it's lacking, that if there's no objective reason to think that he could have been in fear or think he might be harmed. The cases seem to be conceptually not as clear as they could be because it almost appears that there's a condition proceeding that, if we can argue that the force was excessive, you have to have the defendant feeling that they were in fear of what was going on. And then you ask the question, was that excessive? Because force alone is not, you know, that doesn't rise to self-defense. Force doesn't arise to self-defense. Not if it's necessary to perform. Correct. Not when you're resisting arrest. Yeah, yeah, correct. So it has to be excessive force. Right, right. So, I mean, I can imagine, you know, you put your arms behind your back and then they kind of move it up high enough where it's really hurting. That's, you know, that's something. I mean, in Simms, you had a very explicit example of excessive force. Yes. I mean, shoving the guy in the ground. I think they kneed him in the back. I mean, there was all kinds of things going on, right? I think that's Simms. Yes. There was, you know, striking. I think he had an orbital fracture at the end of it all. I think, although I'm agreeing it's an objective test, I think part of the test, though, is the participants. And a 21-year-old female, objectively, is going to have a quicker element of fear, you know, when she's being, you know, berated, essentially, was her testimony. So, yes, I agree it's an objective test. But there's fear element and there's age. Are you suggesting a 21-year-old female has a greater right to resist than a 21-year-old male? I'm really only talking about the perception of fear in this discussion. But it has to be objective. It can't be an unreasonable subjective fear. Well, I mean, I would think if, you know, one of the Bears' offensive linemen was the motorist in the case, that there may be a different analysis as to whether Officer Feisig placed him in fear. So I think it should be a factor. What was the purpose that the officer testified to for the initial touch of the wrist? To get it out of the car? To effectuate, you know, his act of taking her down to the station because she wouldn't sign the ticket. She had to go to the station, in his mind. So he was removing her from the car. Right. Right. One minute, please. Well, I'm just ready to ask for the relief in order to remedy the error of not giving the jury the instruction that was called for. We're asking your honors to reverse Chrissy's conviction of resisting a peace officer, and remand in this case to Will County for a new trial. Thank you. Thank you, Mr. Brown. Mr. Hanson. Good morning, your honors. May it please the court, counsel. My comments will be pretty brief, your honor. Our position here is very straightforward. There was no abuse of discretion because there was no evidence this officer used excessive force here. The cop, and you look at, you know, you look at both parties' testimony here. The cop offered to release her on an I-bond. She refused to sign the ticket and accept that. The cop said, then you're going to have to come to the station to arrange a cash bond. She still refused to sign the ticket. The cop said, get out of the car. She dialed her phone. The cop said again, get out of the car. Wait, wait, wait. Okay, that was the police officer's testimony. But when we're deciding jury instructions, we've got to look at the evidence she put on also, and she takes issue with that. She doesn't really take issue with that. When you look at her statement of facts, which I refer to in my brief as pages four to six of her brief, she doesn't basically refute any of that, your honor, other than matters of extreme nuance. Well, let's talk about one nuance. She says he wouldn't let her. She wanted to look at the light, and she also says he seemed to become agitated and he used some bad language. But what about the issue about whether before he opened the door, whether he asked her or commanded her or whatever, told her to get out of the car? I'm sorry, what's your question? What does she say about whether he told her to get out of the car before he opened the door and grabbed her? She says, due to the aggressive, okay, it's at pages five, six of her brief, she says he told her she couldn't get out to inspect the car light. Then he said she needed to sign the ticket. I didn't mean to interrupt you. Well, I'm just saying, what I'm asking about, what was her testimony? The officer testified he told her to get out of the car, and she didn't do it, and he told her again to get out of the car. She said due to the aggressive tone of the officer's voice, she stayed in her car or called her mother on her cell phone is what she said. But what did she say one way or another, whether the officer had told her to get out of the car? She did not refute that in any stretch of the imagination, Your Honor. I believe I'm fairly staying in, and I'm relying on the defendant's brief in this regard, and I have no complaint with his brief. He set forth the facts fairly and honestly. But when, you know, he said he'd have to contact a supervisor, she wanted to come out, and he said just give me the effing ticket back. She stayed in her car and tried to call her mother. Using another expletive, he said, oh, that's the officer, ordered her to get out of the car. She says he didn't give her time to comply. Am I now answering? Okay, she's saying that two or three times. She got out of the car and snatched the door open. Then he says when he repeatedly said it, she stared forward and said nothing. She says nothing to refute that. He said she was under arrest, opened the door to move her, grabbed her left wrist and her ponytail to get her out of the car. She said not to touch her and lunged toward the other side of the car, toward the passenger side of the car. The other cop got there. By this time, they'd been pulled out of the car, pulled her to the ground and cuffed her. That was, and I'm saying, Your Honor, based on, my position is extremely straightforward. If you reject it, I lose. Based on everything that happened here, namely her resistance from the absolute start, not her resistance coming in later after the cop starts getting nasty to her. Everything in, when you figure an officer may use reasonable force to effectuate an arrest, that's what happened here. She was a recalcitrant defendant. He had to use more force than he would with a good citizen such as one of us who simply would have meekly assented to the arrest. Oh, you can't assume that. Pardon me? You can't assume that one of us would be meek. I was trying to be charitable, Your Honor. Do you think when we evaluate the use of force, we consider the nature of the offense? This wasn't a drug deal going down. No, it was a rear tail light on a license. It was a registration light violation. Right. So why would force ever be necessary for that? That's a question you better ask of that defendant. If she had just simply gone along with it, none of this would have happened. Heck, she could have been released on an I-bond. The force was necessary, as there was, because she made it necessary. Well, she has the right to refuse to sign. And clearly, if he tells her she's under arrest and she won't get out of the car, he's got the right to go in and do whatever is necessary to get her out of the car. That's basically our point. But what the rush here is, is that she says, he never told me he was under arrest. And then all of a sudden, he yanked the door open and said, get out of the car before I can even move, or before I can even fly. He's got a hole in my hair and my arm. She says he used an aggressive tone. You're absolutely correct, Your Honor. She doesn't use the words that he said, I was under arrest. I think she said she didn't recall. She said, right, right. And the cop made the point, and none of this is refuted by anything she says. He didn't strike her or use his palm or use mace or gas or use any kind of holds or use any kind of pain compliance techniques. The point is, the only, our, 100% of our point. He didn't shoot her. No, and he didn't do any of those much lesser things. But no, he certainly didn't do that. And he wouldn't have had to do anything if she had just gone along with the arrest. Nothing to indicate she could have been arrested in this scenario. Everything happened here with less force than there was. She was just uncooperative. She brought it on herself. And she could thus not resist and claim self-defense to a lawful use of force by the officer. True, she said the cop got agitated. That's no evidence of excessive force. True, she said he cursed. Those are mere words. There was never used more force than necessary to make the arrest. And that is our position. Ergo, the judge did not abuse his discretion in saying there's no self-defense claim here, because there was no excessive force used here. Actually, the judge was a her. A her, you're right. Good. Oh, Judge Didi-Eisenberg, yeah. Good point, ex-colleague. That's our point 100%. Thank you, Your Honor. Thank you. Mr. Corrales, the rebuttal. Very great. Again, I think what the State is turning this into is kind of a reasonable-doubt argument. The evidence that it was talking about is one-sided, that the defendant created the situation that made the amount of force that Officer Feistak applied necessary. Could be. Maybe. But it's not automatic, because she testified that there was, well, I'll point you to the record, R407 through 408, and this is transcript, not my brief.  He told me to get the F out of the car. Then what happened? With no second in between, he reached his hands into the car, unlocked it, opened the door, grabbed my left side, my left side, your left side where? My arm. Grabbed your left arm. Then what happened? I was scared, so I did pull back. And it goes on. And then she got her neck grabbed and her ponytail grabbed. And, you know, what this reminds me of is a little bit like the issue that ultimately resulted in relief in People v. McCoy. I believe that was authored by you, Justice Carter, about the closing argument was, well, if she just doesn't argue, I mean, as soon as she argues, it's resisting. And that's not our issue here, but that's kind of a blame-shifting thing that I'm hearing from the state, is you just meekly take the ticket and then go home and find out that maybe the light was working. I don't know. Well, if you do, then what do you do? You go plead not guilty. You don't have any choice, but Simpson doesn't have a choice to refuse to take a ticket, does he? No. Under any circumstances? But this is a case of an officer overplaying the role he has. Well, that's a jury argument. And the legal argument here is, is there enough evidence to, you know, looking from her standpoint, that excessive force on his part that would warrant resisting on her part as self-defense, correct? That's a jury argument. Both of those are jury arguments. The problem is the jury didn't get that argument. Okay, good point. And so we've kind of talked about that evidence, and so the issue is, I guess, as a matter of law, does her testimony rise to the level that would make a jury question out of her right to resist? Correct. And I think that fairly summarizes what this case is about. What's the charging instrument, alleged factually? It's kind of a combined, and I left it at my table, but it's resisted a lawful command, and then namely the arrest of the defendant. See, that's why I asked the question earlier. It seems a little fluid, the state's approach. Well, she refused to sign. That was resisting. But it appears they're saying she refused to get out of the car. I believe, yes, if you would strictly interpret their charging document, it's the arrest that she's resisting that they're charging her with. And there is some older case law that says you're not entitled as an officer to pull somebody out of the car during a brief investigatory traffic stop. Very brief for a minor offense like this. You can order them out of the car. I know Pennsylvania v. Mims, and to tag along with that, an officer is entitled to use the force necessary to effectuate his duties, and his duties might include ordering the defendant out of the car. I've seen that on YouTube overplayed a lot with young female drivers. I mean, this is not, like you mentioned earlier, Justice, right, a drug sting. This is a young woman. Well, let's don't get anecdotal because I can go on all day because we've been there, okay? But a traffic ticket is technically an arrest, right? It's a... Yes, it is. And so, I mean, she sees this probable cause of arrest. Nobody's questioning here the probable cause for the stop, for the arrest. And even if the color lights are working correctly and this cop was just forced to shoot, that doesn't give her the legal right to resist. Clearly, refusing to sign is not resisting. She has the right not to sign it, correct? Yes. In which case, but then if she chooses to exercise that right, then she's got to go to the police station and post-bomb. Right. She put herself in the situation where the officer was going to take her in to post the bond. Or sign the ticket if she changed her mind at that point. In light of Justice Wright's question, if it is a jaywalking harass, the officer has the right to use whatever force is necessary to effectuate that harass. But she didn't initially forcefully resist. Her resistance was passed. So if you're arresting a jaywalker and he fights, you can take him down. But in this case, her resistance was passed. The point at which, I guess, the resistance occurred is a critical component of the case. And I think my opposing counsel is going to move that point in time a little forward up in the continuum. I think it came a little later. Okay. Thank you. We'll take this matter under advisement. We'll be on brief recess for panel case for the next case.